# AFFIDAVIT

Before me, the undersigned authority, personally appeared Barbara J. Herrin who upon being duly sworn, states as follows:

1. My name is Barbara J. Herrin. I live at 465 Wildwood Dr., New Smyrna Beach, Florida 32168. I am a registered voter in Volusia County.

2. I have signed the Florida Hometown Democracy (FHD) petition.

3. I strongly support the Florida Hometown Democracy petition and wish to see it qualified for the November 2008 ballot.

4. I have given financial donations to the Florida Hometown Democracy, Inc. PAC.

5. I have voluntarily collected Florida Hometown Democracy petitions.

6. I have been actively involved with Florida Hometown Democracy since the political action committee ("PAC") was formed in 2003. I was one of the charter officers of the PAC and have served as campaign manager from the outset. I currently serve as the Deputy Treasurer and campaign manager. My duties have involved all aspects of strategizing and running the petition drive from the collection end to submission of the gathered petitions to the various county Supervisors of Elections ("SOEs"). My PAC duties include full-charge handling of all accounting functions, banking, maintaining internal ledgers, preparing required periodic reports to the State, handling the official FHD email communications, etc.

7. For the majority of the campaign, FHD submitted collected petitions to the various SOEs at regular intervals, usually weekly or monthly, depending on the petition volume. Throughout the campaign, I have timely maintained ledgers of incoming petitions and all shipments out to the SOEs. I rigorously scrutinized petitions that passed through our headquarters, removed incomplete ones and returned thousands of them to the petition signers to correct, so that their petitions would count. I then helped packed them up and shipped them to the various

1    Exhibit "2"

SOEs along with a cover letter and check for the required validation fee. FHD normally shipped UPS or USPS with delivery confirmation, and have positive verification of all shipments claimed, along with the cancelled checks from the SOEs.

8. Several events transpired which have made it exceedingly difficult to get the FHD citizen's initiative onto the November 2008 ballot, compounding the already difficult set of qualifying criteria for ballot access in the State of Florida. The most critical events were the 6-month rollback of the qualifying date from August 1st to February 1st of the election year (ostensibly to give the SOEs adequate time to count the petitions); in July of 2007, the Florida legislature made it "legal" for storeowners to block access to petitioning in public shopping locations and certain public parks, in direct violation of my 1st Amendment right; and lastly, the legislature passed a revocation provision allowing petition signers to "change their minds" and made it retroactive 150 days. The revocation statute also required the revocation petition to be made available at every SOEs office statewide, in direct violation of the State's "100 foot rule" which prohibits political activity from taking place closer than 100 feet from the access door to a polling place.

9. Throughout the summer and fall of 2007, it became increasingly difficult for FHD's paid petitioners and volunteers alike to conduct their constitutional right to petition in public places. Due to increasing issues with the paid petitioning company, and the difficulties the petitioners were experiencing in the field because of the "block and tackle" tactics of Floridians For Smarter Growth, (the petition drive organized by the Florida Chamber of Commerce to oppose Hometown Democracy), FHD terminated the contract of the long-term petitioning company, Progressive Campaigns Inc. (PCI) at the end of November 2007.

10. At the same time, I started personally monitoring the State Division of Election's (DOE) website reports of our certified valid petition numbers in order to more closely track our progress in qualifying in the requisite number of U.S. Congressional Districts. This had formerly been a contract responsibility of PCI. In early December I noticed that in certain counties (Brevard, Broward, Charlotte, Clay,

Columbia, Gadsden, Manatee, Marion, Seminole, Sumter, Volusia and Wakulla) our numbers were declining and changing erratically.

11. On inquiry of the Division of Elections ("DOE") as to what was happening, I was informed that its staff was aware of the problem. DOE admitted that it had problems with its FVRS (Florida Voter Registration System) since its initial conversion to that system in January of 2007. DOE stated in emails that it did not know the exact source or extent of the problem and it would probably take months to straighten out. I have reviewed copies of internal DOE email communications with its system vendor, VR Systems, Inc., obtained by Hometown Democracy through public records requests, which confirmed the confusion surrounding the malfunctioning of the computer systems.

12. Based on my review of myriad emails between DOE and VR Systems and various affected SOEs, it is my opinion that Hometown Democracy experienced an erroneously high number of petitions rejected as "duplicate signatures" due to a computer generated anomaly.

13. I promptly sent a public records request to the 67 SOEs asking them to provide FHD with their current valid totals for our campaign, but received responses from only 50 of them. Not all counties are on the same computer system. Most use the vendor VR Systems, Inc., some use Megalink, and several have in-house, proprietary programs. There may be additional vendors as well, which I was unable to determine. The variety of systems used by the 67 SOEs contributed to the confusion and difficulty of obtaining both accurate petition and U.S. Congressional District counts. The myriad patchwork of systems lends itself to inconsistency and inaccuracy of review, and has contributed to the chaos surrounding the petition validation situation statewide, leading to an inaccurate tally of FHD's final count.

14. Some of the most striking changes I observed on the DOE website were to the revocation totals posted. Investigating this, I read Florida Administrative Rule 1S-2.0091 (Exhibit F). On March 3, 2008, I emailed a public records request to the 67 SOEs for information about their procedure(s) relative to counting the revocations. I received responses back from approximately 30 SOEs. I discovered that some

responding SOEs were misinterpreting the rule. A double counting of revocations resulted because, when a revocation had been signed, the petition was considered invalid, which reduced FHD's reported valid totals. Then when the revocation was certified separately to the DOE, the DOE subtracted that number from FHD valids again, resulting in the double counting of revocations. Five SOEs: Brevard, Lee, Miami-Dade, Pasco and Suwannee, reported to me that they had netted out the revoked petitions from the valids and had reported the revocations as well as a separate total, which had then doubled the revocations. This may have happened in other counties as well. Not all SOEs have responded to my records request. On March 10, 2008, Hometown Democracy President Lesley Blackner sent an official letter (Exhibit G) to all 67 SOEs requesting the same information, and FHD received back 59 responses. As a result of these findings, I have no confidence that the State website totals are correct and may still reflect erroneous numbers because of the revocation double-counting On March 19, 2008 acting DOE Director Sarah Jane Bradshaw acknowledged the issues raised in FHD's letter by sending out a memo titled "Hometown Democracy Allegations" (Exhibit C of Complaint) providing "clarifying guidance" to her SOEs relative to their procedures regarding validating petitions and properly counting revocations.

15. Just 3 weeks shy of the "deadline" of February 1st, the DOE admitted that the FVRS system was not correctly tallying petition counts and requested that all SOEs certify their numbers to date through Jan. 11th by faxing in manual calculations/paper certifications on that date. Then on January 14, 2008 the State passed a 90-day emergency rule in recognition of their problems with FVRS. This rule, Florida Administrative Rule 1SER08-1, (Exhibit H), required SOEs to return to their prior practice of faxing paper petition count certifications to DOE in Tallahassee. The rule required the SOEs to continue to input daily their petition data into the FVRS computer system in an attempt to provide an up-to-date statewide database of voters who had signed a particular citizen initiative petition. The DOE then shut down its online website counts for all citizen initiative campaigns, leaving FHD to "fly blind", with no official point of reference until after the February 1st deadline had passed.

16. By February 1, 2008, HD had submitted a total of 109,070 petitions for the month of January, and a grand total of 821,000+ petitions for the entire FHD 05-18 campaign. By applying a conservative industry standard of a 75% validity rate, I determined that FHD had submitted more than enough petitions to qualify in the necessary 13 U.S. Congressional Districts and to net the required total of 611,009 valids. FHD had not held back any of our shipments, but had on a daily basis, continuously submitted petitions to the various SOEs as they arrived at FHD headquarters.

17. After the deadline passed, DOE received another manual certification from their SOEs, covering the period from January 14th through February 1, tallied the certifications and then announced the ballot placement results for the various campaigns. Per their website totals for Feb 1, 2008, FHD was certified to have only 564,558 valid petitions. After then deducting the 18,731 valid revocations; DOE determined that the remaining 545,827 was not enough to qualify Hometown Democracy for the 2008 ballot. FHD did not commence shipping petitions again until April 17, 2008.

18. Surprisingly, on February 16th, the DOE website totals had changed once again. This time the total number of revocations for Broward County, (impacting all 6 of their U.S. Congressional Districts), was reduced by 6876, bringing the State total from 18,731 to 11,855. When I inquired to DOE as to why this happened, I was told it was due to an error with the Broward County revocations.

19. Since obtaining the official state ballot placement results and certifications on Feb 2nd, I have contacted almost every SOE in an attempt to reconcile the FHD records and receipts for the number of petitions FHD has shipped to each county with their numbers reported to the State. As a consequence, the following counties have subsequently certified additional batches of FHD petitions – all of which were shipped to and received by them before the February 1st deadline. These counties were Bay, Bradford, Brevard, Duval, Glades, Hernando, Highlands, Miami-Dade, Monroe, Palm Beach, Pasco, St. Johns, Volusia, and Wakulla, some of which reported that they had "overlooked" or "misplaced" FHD petitions. After my visit to Duval County, for instance, Beth Fleet, Candidate & Records Director for Duval County, emailed me that they had "discovered" six additional

batches of our petitions, which Duval had inadvertently forgotten to process or certify to the DOE, which they then certified on April 14, 2008. Also Ms. Holly Whiddon, Glades County SOE, emailed me that the reason she had certified no FHD batches was that they were "...from 2006 and we manually verified them at that time, we didn't have a computer program." She has since (March 25, 2008) certified 66 valid Hometown Democracy petitions. These "found" petitions were certified too late to count toward FHD's 2008 goal.

20. On March 13, 2008, alarmed that the overall rejection rate was exceedingly high according to traditional petition validation standards, I began to email a public records request to the 67 SOEs requesting the breakdown of their rejected petition totals by the reason rejected, and a copy of their validation criteria. My email to the SOEs is attached hereto as Exhibit I. Eventually almost all SOEs responded to my request. Many of them included their in-house petition review criteria in their responses to me. Their responses are attached as Exhibit G. I created a spreadsheet in order to organize and summarize the myriad petition review criteria used by SOEs throughout Florida, and to allow for an analysis of the results. The resulting spreadsheet is attached hereto as Exhibit J.

21. The "SOE Reject Criteria Database" spreadsheet lists all counties alphabetically. Each county's "total rejects" is in the first column. The next columns on the spreadsheet identify with green column headers, the lawful statutory petition validation criteria. In the next three columns, the spreadsheet further identifies whether a particular SOE referenced sections 99.097 and/or 100.371, Florida Statutes, and or the state administrative rule in its validation criteria. The columns headed in yellow indicate non-statutory reject criteria used. The "comments" column contains responses I received to the question concerning how the SOEs handled petitions mis-sent to their county, indicating whether they treated them as rejects or returned them to FHD or forwarding them to the proper county. The "finished count?" column addresses whether or not the SOE had finished counting all received Hometown Democracy petitions by February 1st. The last column addresses the total "number of reject reasons used" for petition review as provided by SOEs in their responses.

22. The analysis I have done from the results of the spreadsheet demonstrates several things: 1) that the vast majority of SOEs used many reject reasons in addition to the State mandated criteria, resulting in more than 28,000 unlawfully rejected petitions. 2) The total of petitions reportedly rejected for "duplicate signature" is statistically significant and skewed beyond the realm of probability in our opinion. Since the VR system automatically identified and rejected petitions as "duplicates" for the SOEs, I feel that it is highly likely to be a system-generated anomaly. 3) I see that, due to the deliberate "avalanche" of opposition petitions, many key counties had not finished counting our petitions as of Feb 1, 2008. The totality of all of these circumstances contributed to FHD ostensibly not having the total of 611.009 petitions required for the campaign to receive State certification for inclusion on the 2008 ballot. In my opinion, in all probability, FHD met all of the certification requirements.

23. During the month of January leading up to the Presidential Preference Primary, some FHD volunteers spent several days at the Miami-Dade SOE office. They observed the petition validation process involving all of the local and statewide campaign's petitions, and local candidate qualifying petitions, and the confusion caused by the Miami-Dade SOE using 20 categories of rejection criteria, see Exhibit J.

24. Based upon observations of the chaotic atmosphere, of untrained temps processing loose, unsecured piles of petitions etc, and having determined from my records request that the reasons for rejecting petitions were so numerous and so varied from county to county, I decided in February to personally visit certain SOEs in order to observe their validation procedures, and to review the actual rejected petitions themselves.

25. Subsequently, FHD Treasurer Pamela Winchester and I personally visited the Volusia County SOE. Ms. Winchester and I spent several hours at their office reviewing thousands of rejected petitions. Most notably, I observed that hundreds of Hometown Democracy petitions were rejected as "illegal" forms, defined by them as "illegal" by virtue of the political disclaimer at the bottom of the petition being partially cut off due to a sloppy printing run. This is not a lawful rejection reason.

26. I also observed that many petitions were rejected as "out of county" voters meaning that the voter did not show up on the Volusia County voter rolls, but was obviously from another county. When asked if I could have those rejected "out of county" back so that FHD could re-submit to the proper county, Volusia County SOE Ann McFall refused, saying that she would only provide FHD with a copy (for a charge), and that she was "under no obligation " to return them to FHD or forward them on to the proper county. This contrasts with the practice of other SOEs who did, in fact, return inadvertently mis-sent petitions, or who forwarded them to the county where the voter was registered, as Palm Beach staff indicated to me they had done on my visit there (see paragraph #29 below). Exhibit I contains copies of the notes I compiled during our visit along with copies of samples of petitions rejected as "illegal forms", deceased after signed date, "DOB missing" where voter had listed her birth date, "ineligible-out of county" voters, etc. Another egregious reject reason was where the address on the petition differed from that on their voter rolls in violation of State law regarding address discrepancies, per Bradshaw March 19th memo attached to the Complaint as Exhibit C.

27. Mrs. Winchester and I visited the Orange County SOE. I observed that staff did not validate from an original petition. Rather, Orange County scanned batches of petitions and then staff validated from a scanned image. I asked how staff determines if a signature is original and was told that they cannot. To my knowledge, no other county SOE uses this idiosyncratic in-house system. Because of this, valids are not segregated from invalids and there was no way to review their rejected petitions for unlawful reject reasons. Orange County's rejection criteria provide 21 rejection categories. As an example of how faulty the Orange County system is, Mrs. Winchester and I had staff pull up several scanned images to demonstrate their validation process. I observed petition images that were sideways, blurred, overlapping and generally unreadable.

28. In Duval County Ms. Winchester and I randomly reviewed hundreds of rejected petitions. Approximately 20 petitions were located that were re-checked by staff and found to be valid, but staff refused to recertify these erroneously rejected petitions. Staff told me they could not do that. Further, any out-of-county petition was deemed rejected, rather than sent back to FHD, in contrast to other counties.

29. In Palm Beach County Ms, Winchester, Ms. Blackner and I reviewed only one of seven boxes of rejected petitions. Staff checked petitions that we requested to be reviewed. Approximately one dozen petitions were found to be valid and staff told me that Hometown Democracy would be credited with these petitions. They further told me, that time permitting, they would attempt to review all rejected petitions and credit Hometown Democracy with any improperly rejected ones. Palm Beach County had, in fact, previously returned some mis-sent petitions to FHD by mail, and they gave Ms. Winchester some back on that date.

30. In addition, Hometown Democracy hired a petitioning company in Miami to review all of the rejected petitions at the Miami-Dade SOE office. The company reviewed approximately 50,000 rejected petitions and, as a result, located 1039 petitions which I feel should have been deemed valid. Their findings demonstrate that the Miami-Dade SOE improperly used in-house, often idiosyncratic petition rejection criteria that differs significantly from the citizen initiative petition review criteria set forth in section 100.371(3), Florida Statutes.

31. Miami-Dade Deputy SOE Ivy Korman, in a recent email dated May 8, 2008, admitted that additional petitions had been determined to have been rejected due to yet another unlawful "incorrect rejection reason" and that the number of such rejects is unknown. Her email states:

> The eight people designated as "rejected" due to Status 24/circulator problem were given an incorrect "rejection" reason. Unfortunately, at this time we will never be able to figure out why their petition was rejected.
>
> When our system goes back up, I will have staff enter the 100s of petitions found by Barbara's staff that were previously marked as "invalid". Hopefully, my staff will be able to make them "valid". I will give the count to Barbara.

Her candid email (Exhibit L) is an illustration of the unfairness and difficulties faced by Hometown Democracy in meeting Florida's

numerical requirements for ballot access arising from the use by SOEs of a myriad of petition rejection criteria.

32. On April 21, 2008, Donald Palmer, Director of DOE, sent out a memorandum to all SOEs referencing this myriad of rejection criteria and strongly advised the SOEs that all counties must comport with state law and use only the State's criteria (Exhibit M).

33. As of this date, June 26, 2008, the official valid tally on the DOE website for the Hometown Democracy petition stands at 600,540 and 13,182 revocations. This reflects only certifications from SOE's through June 16, 2008. The latest DOE count can be obtained at: http://election.dos.state.fl.us/initiatives/initdetail.asp?account=37681&seqnum=2

34. The DOE website indicates that Hometown Democracy has qualified 11 of the thirteen U.S. Congressional districts necessary to be certified for the ballot. However, this figure does not reflect recent petition count certifications from numerous SOEs who may have not faxed in their batch totals to the DOE since February 1st. The website count also does not reflect improperly rejected petitions, which in my opinion number in the thousands. Nor does the website count reflect double counting of revocations. Therefore, the website count is not an accurate total of all valid Hometown Democracy petitions.

35. In conclusion, it is my opinion that FHD have submitted more than enough valid petitions, in excess of 827,000, to have qualified for the 2008 ballot, if all of the petitions that FHD submitted had been counted in time before the deadline, and if the petitions had been validated using the same, uniform validation criteria across the state. It is also my observation and belief that this resulted in FHD petitions receiving different and disparate treatment across the state, because they were subjected to 67 different methods of validating, using a wide variety of criteria, many of which exceeded the state's lawful rejection reasons. There was no equal protection because the same petition would have been treated differently depending on the county to which it was submitted. What one SOE staffer saw as a "hanging chad" might have appeared to have been a "pregnant chad" by a temp at another SOE, and yet again viewed as "clear intent of the voter" by a third.

36. The total effect of all of the changes to rules and procedures, the lack of standard, uniform guidelines, new deadlines, etc. has served to be a deliberate barrier to FHD's ballot access. The new, shorter deadline for submissions has served no real public purpose. In fact, it did not provide the time necessary to count the petitions received. In addition, Floridians for Smarter Growth was able to "game the system" and used the February 1st deadline to create a deliberate petition "train-wreck" in counties throughout the state. This would not have been possible had there been in place a pre-requisite minimum threshold for a petition campaign to meet, such as Supreme Court approval, before being allowed to submit petitions for validation. The cumulative impact proved to be detrimental to not just the FHD campaign, but to the integrity of the whole petition process and the core election system itself.

37. I fear that federal constitutional rights are being violated by the State of Florida and by the county SOEs by their mis-management of the petition validation and qualification process.

All of the foregoing are facts personally known to me.

Signature of Affiant: *Barbara J Herrin*

Subscribed and sworn to before me on June 26, 2008 by

BARBARA J. HERRIN, who is personally known to me, or has presented _____ as identification.

Signature of Notary: *Judith Ann Martin*

JUDITH ANN MARTIN
Notary Public - State of Florida
My Commission Expires Oct 24, 20[..]
Commission # DD 697090
Bonded Through National Notary Assn.

Printed name of notary