## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.  08-CV-80636-KAM

FLORIDA HOMETOWN DEMOCRACY, INC.,
PAMELA WINCHESTER, BARBARA HERRIN,
SUSAN DUNN, JOHN DUNN, NANCY LEE,
JOSEPH FLORIO, JANET STANKO and JOYCE TARNOW,

        Plaintiffs,

vs.

KURT BROWNING, in his Official Capacity
as Florida Secretary of State,

        Defendant.
_____/

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendant Kurt S. Browning, in his official capacity as Secretary of State for the State of Florida, respectfully submits this memorandum of law in opposition to Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION

A district court may grant a preliminary injunction only if the movant establishes: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction is entered; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction is not adverse to the public interest. Florida Democratic Party v. Hood, 342 F. Supp. 2d 1073, 1076 (N.D. Fla. 2004) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)).  "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites."  McDonald's

1

Corp., 147 F.3d at 1306. Moreover, an injunction that "provides practically all of the relief …

sought on the merits … should not be granted except in rare instances in which the facts and law

are clearly in favor of the moving party." Miami Beach Federal Savings & Loan Ass'n, 256 F.2d

410, 415 (5th Cir. 1958). Further, mandatory relief, such as that sought by the Plaintiffs, "is

particularly disfavored, and should not be issued unless the facts and laws clearly favor the

moving party." Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976).

In their Motion, Plaintiffs ask this Court to enter an injunction: (1) prohibiting Defendant

from enforcing the Florida Constitution's February 1 deadline for initiative petitions; (2)

prohibiting the alleged use of disparate signature validation criteria by the county Supervisors of

Elections; (3) invalidating Section 100.371(8), Florida Statutes, which recognizes the right of

private property owners to permit or prohibit the circulation of initiative petitions on their

premises; and (4) directing Defendant to place the proposed Hometown Democracy Amendment

on the November 4, 2008 general election ballot.

As discussed below, none of the requirements for a preliminary injunction have been met

in this case. The Motion should be denied for all of the following reasons: (1) the Motion is not

ripe as venue is a threshold issue that must first be resolved; (2) Plaintiffs cannot succeed on

their constitutional challenge to the February 1 deadline in the Florida Constitution because any

right to amend the Florida Constitution by initiative is a state right and not a federal right; (3)

Plaintiffs' request for an injunction prohibiting the alleged use of disparate standards by the

Supervisors of Elections must be denied because:  (a) there is no evidence that Secretary

Browning has violated any federal constitutional rights of Plaintiffs, and (b) Plaintiffs have failed

to join the Supervisors of Elections who are necessary parties; and (4) Plaintiffs' request for an

injunction invalidating Section 100.371(8), Florida Statutes, must be denied because: (a)

Plaintiffs failed to challenge that statute in their Complaint, (b) Secretary Browning has no authority to enforce the statute and therefore is not the proper defendant, and (c) Plaintiffs have failed to establish that the statute is unconstitutional.

The Motion should also be denied because Plaintiffs will not suffer an irreparable injury if an injunction is not entered. Under Florida law, signatures on an initiative are valid for four years. Thus, Plaintiffs can use most, if not all of the signatures they have obtained to date toward getting their initiative on the 2010 ballot. Consequently, Plaintiffs have not suffered an irreparable injury.

I.   **THE MOTION IS NOT RIPE BECAUSE VENUE IS A THRESHOLD ISSUE THAT MUST BE RESOLVED.**

Secretary Browning has previously moved this Court to dismiss or transfer this case because venue is not appropriate in the Southern District of Florida. As set forth in Secretary Browning's Motion to Dismiss, there is no nexus between the acts complained of by Plaintiffs, the Secretary of State's Office, and this honorable Court. The Secretary of State's office is housed entirely in Tallahassee, Florida and the allegations made by Plaintiffs against the Secretary as set forth in the Complaint all occurred in Tallahassee, Florida and the Northern District of Florida. The Eleventh Circuit in Home Insurance stated venue is a threshold issue to be determined prior to any adjudication on the merits of a case. Home Ins. Co. v. Thomas Indust., Inc., 896 F.2d 1352, 1357 (11th Cir. 1990) (citing Vest v. Waring, 565 F. Supp. 674, 692 (N.D. Ga. 1983); Blackmar v. Guerre, 342 U. S. 512, 514 (1952)). This Court should therefore review the appropriateness of this action's venue at the threshold, and dismiss or alternatively transfer the action to the Northern District, where the merits of the request for injunctive relief can be properly addressed.

## II.     PLAINTIFFS HAVE NOT MET THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

### A.     Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits.

#### The Standard for Adjudicating Plaintiffs' Constitutional Claims.

Plaintiffs' memorandum of law "proceeds from the erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny." Burdick v. Takushi, 504 U.S. 428, 432 (1992). The jurisprudence of the Supreme Court of the United States "does not so hold." Id. In fact, the Supreme Court has noted that "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; (and) 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" Id. at 433 (citing Storer v. Brown, 415 U.S. 724, 730 (1974)).

Consequently, as stated in Burdick, "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as (Plaintiffs) suggest, would tie the hands of States seeking to assure that elections are operated equitably and efficiently." Burdick, 504 U.S. at 433. Instead, a flexible standard is applied in cases involving challenges to state election laws. Under the Burdick standard, if a state election law "imposes only 'reasonable, non discriminatory restrictions' upon the First and Fourteenth amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." Id. at 434.

In this case, the constitutional and statutory provisions that Plaintiffs have challenged are both reasonable and non-discriminatory. Moreover, for the reasons discussed below, the State's regulatory interests are more than sufficient to justify the provisions being challenged.

1. **Plaintiffs Have Not Established that the February 1 Deadline in Florida's Constitution Violates the First Amendment.**

Plaintiffs ask this Court to enjoin the Secretary from enforcing the February 1 filing deadline for initiatives that is contained in Article XI, Section 3 of the Florida Constitution. The February 1 deadline was approved by the citizens of the State of Florida at the November 2004 general election. The adoption of the February 1 deadline for initiatives was proposed by a joint legislative resolution.

Significantly, the joint resolution which was approved by Florida voters in 2004 made two changes to the State Constitution. In addition to establishing a February 1 filing deadline for initiatives, it also amended Article IV, Section 10 of the Constitution to establish an April 1 deadline for the Florida Supreme Court to render an opinion on the validity of a proposed initiative.[1] These two deadlines must be read and considered together. Specifically, the February 1 deadline ensures that the Florida Supreme Court will have at least two months to rule on the validity of an initiative.

A Senate Staff Analysis dated March 12, 2004[2] summarized the constitutional changes that were adopted in 2004 as follows:

> The joint resolution amends two different sections of two articles of the *Florida Constitution* to impose specific deadlines for filing an initiative petition and for judicial validation of the initiative petition in order for the initiative to be placed on the ballot.
>
> First, the joint resolution amends s.10 of Article IV of the *Florida Constitution* to establish February of each general November election year as the deadline for receipt by the Secretary of State of all certified initiative petition signatures from the supervisors of elections in lieu of the 91 days before the general election. Sponsors of initiative petitions will need to obtain signatures well in advance of the February 1 deadline to allow enough time for the supervisors to validate and certify the signatures submitted.

---

[1] See Senate Joint Resolution No. 2394, copy attached as Attachment A.
[2] A copy of the Staff Analysis is attached as Attachment B.

> Second, the joint resolution also amends s. 5 Article XI of the
> *Florida Constitution*, to establish April 1 of each general election
> year as the deadline for the Florida Supreme Court to render its
> written opinion on an initiative petition's validity.  Currently, the
> constitution only requires the Court to render its decision
> "expeditiously."  (Emphasis added).

See Attachment B, pg.4.

The Florida House of Representatives established a Select Committee on Constitutional Amendments.  One of the Committee's recommendations was to move the filing deadline for initiatives from 90 days to 240 days before an election.  The Committee recommended that change for the following reasons:

> Such extension of time allows more deliberation, legislative
> hearings and possible alternatives to be placed on the ballot.  It
> also permits earlier termination of litigation so that ballots are
> finalized earlier.  Without this change, any statutory process
> reforms must reflect the continued ability to file the signatures as
> late as the first week in August, creating serious logistic problems
> for both the election machinery and the courts.

See Attachment C, pg. 3.

Plaintiffs do not address how the Florida Supreme Court will be able to timely comply with the April 1 deadline if the February 1 deadline is ruled unconstitutional.  The relief requested by Plaintiffs will create logistical problems for the courts and confusion and uncertainty for the Supervisors of Elections who must prepare the ballots.  It will reduce the amount of time for public debate on a proposed initiative and deprive the Legislature of the opportunity to propose alternatives.  While Plaintiffs may prefer a later deadline for initiatives, or perhaps even no deadline at all, Florida voters have decided to condition their state constitutional right to amend their Constitution by initiative upon a February 1 deadline.

Plaintiffs claim the February 1 deadline was "further advanced by the DOE to December 31." In support of that argument, Plaintiffs refer to Exhibit B to their Complaint which is a DOE memorandum that was sent to the Supervisors of Elections which states in part:

> Second, today, December 31, is the deadline for petitioning groups to submit petitions to you to ensure the petitions are verified and included in the February 1st certification. Although petitions may, and will, be submitted to you after today, please make every effort to verify them and have them included in the February 1st certification.

Plaintiffs fail to mention § 100.371(3) which provides in pertinent part: "The supervisor shall promptly verify the signatures within 30 days of receipt of the petition forms and payment of the fee required by § 99.097." Because Supervisors of Elections are obligated to verify the signatures within 30 days of receipt, the December 31 date referenced in Exhibit B to the Complaint simply reflects that 30-day period. However, the DOE memorandum makes it clear that the Supervisors of Elections should nonetheless make every effort to verify petition signatures that were submitted to them after December 31.

Secretary Browning is not responsible for the Plaintiffs' failure to submit petitions to the SOEs in a timely manner. Plaintiffs were on notice that § 100.371(3) gave SOEs up to 30 days to verify initiative signatures. As noted in the Senate Staff Analysis that is quoted on pages 5-6 above, it was obvious that sponsors of initiative petitions would "need to obtain signatures well in advance of the February 1 deadline to allow enough time for the supervisors to validate and certify the signatures submitted."

Freedom of Speech

Plaintiffs' challenge to the February 1 deadline fails to state a claim because the deadline regulates the reasonable timeline by which an initiative is placed on the ballot. It does not restrict speech or expressive conduct of initiative proponents. This is critical because the courts

have drawn a clear distinction between initiative regulations that restrict the ability to communicate ideas, and those that regulate the process by which an initiative is placed on the ballot. Only the former implicate the First Amendment's guarantee of the freedom of speech.

In Biddulph v. Mortham, 89 F.3d 1491 (11th Cir. 1996), the Eleventh Circuit determined that the balancing test called for by the Supreme Court in candidate ballot access cases[3] does not apply to "general initiative" regulations, since there is no constitutionally protected right to place an initiative on the ballot. Id. at 1497, 1500 n.10. The Biddulph court dismissed for failure to state a claim on a First Amendment challenge asserting that Florida had made it overly burdensome to qualify an initiative for the ballot. Id. at 1501.

Like the plaintiff in Skrzypczak v. Kauger, 92 F.3d 1050, 1053 (10th Cir. 1996), Plaintiffs "mistakenly conflate [their] legally-protected interest in free speech with [their] personal desire to have [an initiative placed] on the ballot." "The right to free speech … [is] not implicated by the state's creation of an initiative procedure, but only by attempts to regulate speech associated with an initiative procedure." Initiative and Referendum Institute v. Walker, 450 F.3d 1082, 1099 (10th Cir. 2006) (emphasis in original) (quoting Save Palisade Fruitlands v. Todd, 279 F.3d 1204, 1211 (10th Cir. 2002)). See also Skrzypczak, 92 F.3d at 1053 ("right to free speech in no way depends on the presence of [an initiative] on the ballot."). "Although the First Amendment protects speech incident to an initiative campaign, it does not protect the right to make a law by initiative or otherwise." Walker, 450 F.3d at 1099. The February 1 deadline enshrined by the people of Florida in their Constitution simply regulates the process by which an initiative can be placed on the ballot. It does not restrict the ability of the proponents or opponents of the initiative to communicate their ideas or express their political views. As in

---

[3] See Burdick v. Takushi, 504 U.S. 428 (1992); Anderson v. Celebrezze, 460 U.S. 780 (1983).

<u>Biddulph,</u> Plaintiffs' dispute with the February 1st deadline is that it makes it more difficult for them to place their petition on the 2008 ballot. Such a challenge does not raise a free speech claim under the First Amendment.

<u>Voting and Association Rights</u>

Plaintiffs cite to a number of cases where courts have struck down early deadlines for new or smaller party candidates to be placed on a ballot. Many of these cases involved candidates for president of the United States or another federal office. Additionally, in many of these cases, the courts found the early deadline gave "the two old, established parties a decided advantage over new parties…." See, e.g., <u>Williams v. Rhodes</u>, 393 U.S. 23, 31 (1986). Those cases are clearly distinguishable as they involve candidates for elected office, and not a deadline for a state initiative.

The Eleventh Circuit has long held that "there is no constitutionally protected right to place issues before [a state] electorate," and "any opportunity to do so must be subject to compliance with state constitutional requirements." <u>Gibson v. Firestone</u>, 741 F.2d 1268, 1273 (11th Cir. 1984). "As with the right to free speech, the right to vote is not implicated by the state's creation of an initiative procedure." <u>Todd</u>, 279 F.3d at 1211 (citing <u>Kelly v. Macon-Bibb County Bd. of Elections</u>, 608 F. Supp. 1036 (M.D. Ga. 1985)). The <u>Kelly</u> court held that the right to vote involves candidates' rights to offer themselves for public office and the voters' rights to vote for or against a candidate. <u>Id.</u> at 1273. Conversely, the right to have an initiative put on a ballot "derives wholly from state created procedures." <u>Id</u>. at 1273.

Courts have used the same line of reasoning to dismiss freedom of association claims like Plaintiffs. "Because the right to initiate legislation is a wholly state-created right, we believe that the state may constitutionally place nondiscriminatory, content neutral limitations on the

plaintiff's ability to initiate legislation." <u>Taxpayers United for Assessment Cuts v. Austin</u>, 994 F. 2d 291, 297 (6th Cir. 1993) (holding that a freedom of association challenge to Michigan's procedure for validating initiative petition signatures failed to state a claim).  <u>See also</u> <u>Biddulph</u>, 89 F.3d at 1499 n.8 (holding that a challenge to the difficulty of an initiative process could not sustain a freedom of association claim.)

The law in the Eleventh Circuit is that the right to vote is not violated, or even implicated, by the removal of an initiative from the ballot for failure to comply with state law.  Similarly, assertions as to the burden of the initiative process do not provide grounds for freedom of association claims.  Plaintiffs' disagreement with the February 1 deadline is the burden it allegedly places on attaining a ballot position.  The February 1 deadline, however, is a content neutral ballot initiative regulation.  Plaintiffs cannot and do not assert that they were disparately impacted by it.  Therefore, Plaintiffs are not substantially likely to succeed on the merits of their voting or association rights challenges to the February 1 deadline, because they fail to state a claim for which relief can be granted on either of those issues.

2.     **Plaintiffs Have Not Established that Secretary Browning Has Violated Their Constitutional Rights.**

i. **Plaintiffs have not established a violation of any due process rights by Secretary Browning.**

Plaintiffs claim they have been denied due process rights in the course of their initiative campaign.  This assertion stems from alleged mistakes by certain unidentified Supervisors of Elections.  These are locally elected, independent state officials--not subordinates of Secretary Browning. Art. VIII, §1(d), Fla.Const.

While Plaintiffs claim the alleged use of disparate standards by SOEs is somehow attributable to the Defendant, they have not presented any evidence to support that claim.  To the

contrary, Exhibit C to the Complaint demonstrates that the Defendant issued clear and accurate guidance to the SOEs concerning the verification of petition signatures. To the extent Plaintiffs may believe one or more of SOEs may not have followed that guidance, their dispute is with those SOEs and not the Defendant.

At best, Plaintiffs allege that "some" Supervisor of Elections did not properly validate some of the signatures gathered by Plaintiffs in support of their initiative petition. Defendant, however, is not responsible for the actions of the Supervisors of Elections in this arena. However, even if he were, these mistakes, if in fact made, were not alleged to be intentional and would constitute little more than garden variety election irregularities.

The Eleventh Circuit Court of Appeals in Burton v. State of Georgia, 953 F.2d 1266, 1271 (11th Cir. 1992) stated that "[s]o long as the election process is not so impaired that it is 'patently and fundamentally unfair,' substantive due process is satisfied." Human error "in the conduct of elections does not rise to the level of a Fourteenth Amendment constitutional violation actionable under § 1983 in the absence of willful action by state officials intended to deprive individuals of their constitutional right to vote." Gold v. Feinberg 101 F.3d 796, 802 (2d Cir. 1996). Human error is something we all have to live with. Id. at 802. In Daniels v. Williams, 474 U.S. 327, 328 (1986), the Supreme Court held "that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property," and that "a negligent act could not amount to a constitutional deprivation." The Daniels Court thereby "clearly articulated that a finding of intentional conduct was a prerequisite for a due process claim." Shannon v. Jacobowitz, 394 F.3d 90 (2nd Cir. 2005).

In Shannon, voters and a candidate filed a § 1983 action against a county board of elections and two board commissioners claiming that a voting machine malfunction deprived

them of their constitutional right to vote.  The Second Circuit began its analysis by noting that the due process clause does not offer a guarantee against errors in the administration of an election.  Id. at 94 (citing Powell v. Power, 436 F.2d 84, 88 (2d Cir. 1970)).  Further, the court stated that "[i]n general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election.'"  Id. at 96 (citing Bennett v. Yoshina, 140 F.3d 1218, 1226 (9th Cir. 1998)).  The Court listed "human error resulting in miscounting of votes," and "mechanical and human error in counting votes," as examples of garden variety election irregularities the presence of which raise no Due Process issues.  Id. at 96.

Similarly, the alleged mistakes by the Supervisors of Elections do not violate the Due Process Clause.  Consequently, Plaintiffs have failed to establish a substantial likelihood of winning on the merits of their Due Process challenge.

### ii. Plaintiffs Have Not Established a Violation of the Right to Equal Protection

Plaintiffs also claim that the alleged actions or inactions of various unidentified Supervisors of Elections denied them equal protection of the law.  However, an essential requirement of any § 1983 equal protection claim is "intentional and purposeful discrimination." Gold v. Feinberg, 101 F.3d 796, 800 (2d Cir. 1996).  Additionally, the Eleventh Circuit Court of appeals has held that "[t]o establish a violation of the Equal Protection Clause of the Fourteenth Amendment . . . [Plaintiffs] must show that the [Defendant's] decision or act has a discriminatory purpose and effect."  Burton v. City of Belle Glade City, 178 F.3d 1175, 1188-89 (11th Cir. 1999).  The United States Supreme Court has held that "no State can pass a law regulating elections that violates the Fourteenth Amendment's command that 'No State shall . . . deny to any person . . . equal protection of the laws.'"  Williams v. Rhodes, 393 U.S. 23, 29

(1968).  The Supreme Court, in setting the standard under which to adjudicate equal protection challenges, stated that "in determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification."  Id. at 30.  However, in the absence of intentional and purposeful discrimination required by Gold, the analysis provided by Williams v. Rhodes is never reached.

The requirement of intentional and purposeful discrimination will often manifest itself in systematic, consistent denial of equal protection.  As such, when deciding election cases with claimed equal protection violations, courts have stated a need to:

> [R]ecognize the distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote.  Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause.

Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir. 1980).  The Fifth Circuit Court went on to state that "[t]he unlawful administration by state officers of a non-discriminatory state law, 'resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'"  Id. at 453 (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)).

If intentional or purposeful discrimination is found, courts faced with equal protection claims must then ask the following two questions:  (1) what is the classification on which the discrimination was based, and (2) what level of scrutiny should be applied?  In answering these questions, courts must bear in mind that "The Equal Protection Clause applies to claims of class-based discrimination."  Wasson v. Oregon, No. Civ. 03-6226-TC, 2005 WL 711683, at *5 (D.

Or. March 28, 2005).  <u>See, e.g.</u>, <u>Plyer v. Doe</u>, 457 U.S. 202 (1982).  Election cases involving initiatives are no exception.  Courts applying the Equal Protection Clause to this arena have held that when a plaintiff "has not alleged that they are members of a suspect class," the state's initiative regulations "will pass constitutional muster if they are reasonably related to a legitimate government interest."  <u>Taxpayers United for Assessment Cuts v. Austin</u>, 994 F.2d at 297 (citing <u>Moore v. City of East Cleveland</u>, 431 U.S. 494, 498 (1971)).  In other words, if there is no impermissible class based discrimination, an equal protection violation proceeds under a rational basis analysis.

The Defendant is not responsible for the actions or inactions of the Supervisors of Elections.  However, should this Court consider Defendant so responsible, Plaintiffs still have failed to set forth any facts showing intentional or purposeful discrimination by any of the Supervisors of Elections.  Without the essential element of intentional or purposeful discrimination, a § 1983 Equal Protection challenge cannot stand.

In sum, Plaintiffs have failed to show a substantial likelihood that they will succeed on their due process or equal protection claims on the merits.  Therefore, their prayer for injunctive relief should be denied.

### iii.  <u>Plaintiffs Cannot Show a Substantial Likelihood of Success on the Merits Because They Failed to Join Necessary Parties</u>.

In their Motion, Plaintiffs seek an injunction prohibiting the continued use of alleged disparate signature verification criteria by various Supervisors of Elections.  However, Plaintiffs have failed to join any of the allegedly offending Supervisors of Elections as party defendants to this action.  Without these necessary parties, the Plaintiffs are not entitled to the relief sought in the Motion for Preliminary Injunction.

Because these Supervisors of Elections are necessary parties that Plaintiffs have failed to join as parties to this lawsuit, they cannot show a substantial likelihood of success on the merits, and thus are not entitled to an injunction.

### 3. **Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on Their Claim that § 100.371(8), Florida Statutes, is Unconstitutional.**

#### i. **Plaintiffs Failed to Challenge the Constitutionality of § 100.371(8) in Their Complaint.**

The Motion asks this Court to enter a preliminary injunction "invalidating Florida's new law granting private property owners the power to selectively permit or prohibit the circulation of citizens' initiative petitions on their premises." However, the Complaint never questioned, let alone challenged, the constitutionality of § 100.371(8). Since the constitutionality of § 100.371(8) is a new claim entirely distinct from those raised by the Complaint, preliminary injunctive relief must be denied.

Plaintiffs filed this suit in an effort to get their initiative on the November 2008 general election ballot, and the constitutionality of § 100.371(8) is unrelated to their ballot access claims. A party moving for preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. Devose v. Herrinton, 42 F.3d 470, 471 (8th Cir. 1994). Secretary Browning committed no action which was in any way related to the alleged July 2007 arrest of Plaintiff Joyce Tarnow, and Plaintiffs allege none. A court should not enjoin conduct unrelated to the issues in the suit. Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997) (citing De Beers Consol. Mines v. U.S., 325 U.S. 212 (1945)); Stewart v. U.S. I.N.S., 762 F.2d 193 (2nd Cir. 1985).

Further, while Plaintiffs filed a Notice of Filing certifying that a copy of the Complaint was served on the Florida Attorney General, there is no indication that a copy of the Motion for Preliminary Injunction was served on the Office of the Attorney General. Since the Motion is

the first pleading to challenge the constitutionality of § 100.371(8), the Plaintiffs were required to serve a copy of their motion on the Attorney General. For these reasons, Plaintiffs' request for injunctive relief should be denied.

### ii. Plaintiffs Lack Standing to Challenge § 100.371(8) in a Suit Against Florida's Secretary of State.

Standing is a threshold issue in every federal case. Warth v. Sedlin, 422 U.S. 490, 498 (1975). The United States Supreme Court has acknowledged the burden of establishing standing is the plaintiff's. To establish Article III standing, Plaintiffs must show that they have 1) suffered an injury in fact, that is 2) fairly traceable to the actions of the defendant, and that is 3) likely redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). Plaintiffs do not have standing to challenge the constitutionality of Fla. Stat. § 100.371(8) in a lawsuit against Secretary Browning because their allegations do not satisfy the Article III requirements of causation and redressability.

The causation component needed to establish standing requires "a causal relationship between the injury and the challenged conduct . . . that the injury 'fairly can be traced to the challenged action of the defendant,' and has not resulted 'from the independent action of some third party not before the court.'" Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla., 508 U.S. 656, 663 (1993) (citing Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). Defendant assumes Plaintiffs' challenge to Fla. Stat. § 100.371(8) stems from the alleged arrest of Joyce Tarnow. Plaintiffs, however, cannot and do not allege that any action by the Defendant caused the alleged arrest of Plaintiff Tarnow. As Plaintiffs cannot establish causation, they lack the constitutionally required standing to challenge § 100.371(8).

The redressability element of Article III standing requires Plaintiffs to establish "a likelihood that the injury will be redressed by a favorable decision . . . [and] that the 'prospect of obtaining relief from the injury as a result of a favorable ruling' is not 'too speculative.'" Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla., 508 U.S. 656, 663-664 (1993) (citing Allen v. Wright, 468 U.S. 737, 752 (1984)). Law enforcement and state attorneys are the governmental entities tasked with enforcing Fla. Stat. § 100.371(8), not the Secretary of State.  Thus, it is not only speculative, but also impossible to establish that an injunction against Defendant will preclude the statute's enforcement.  Therefore, as Plaintiffs cannot establish that injunctive relief would provide the relief they desire, they fail to satisfy the redressability element of standing required by Article III.  Accordingly, Plaintiffs lack standing to challenge the constitutionality of § 100.371(8).

### iii.  Plaintiffs Have Not Established that § 100.371(8) is Unconstitutional.

Even if Plaintiffs have standing, they still failed to establish a likelihood of success in their claim that the statute is unconstitutional.  Plaintiffs claim that § 100.371(8), Florida Statutes violates their right to free speech, but they fail to recognize that "the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."  Hudgens v. N.L.R.B., 424 U.S. 507, 513 (1976).   Section 100.371(8) does not abridge Plaintiffs' constitutional rights.  It does not bar initiative petitioners from circulating petitions on private property, but instead, the statute merely recognizes private property owners' right to exclude petition gatherers from their premises.  Because "[t]he First Amendment does not prevent a property owner from restricting the exercise of free speech on private property, including a private shopping mall" there is no valid claim that the rights recognized by § 100.371(8), Florida

Statutes are unconstitutional.  Strahan v. Frazier, 62 Fed. Appx. 359, 2003 WL 1411339 (1st Cir. 2003) (citing Hudgens v. NLRB, 424 U.S. 507, 513-521).

The United States Supreme Court, in Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551 (1972), ruled on a case involving the discretion of private property owners to exclude initiative petitioners from their property.  The Supreme Court ruled, "[i]t would be an unwarranted infringement of property rights to require them to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist.  Such an accommodation would diminish property rights without significantly enhancing the asserted rights of free speech."  Id. at 567.  The Court further stated, "the First and Fourteenth Amendments safeguard rights of free speech and assembly by limitations on state action, not on action by the owner of private property used nondiscriminatorily for private purposes only."  Id. at 567.  The Supreme Court vacated the injunction.  In light of Lloyd, Plaintiffs have not established a substantial likelihood of success on the merits of their constitutional challenge to § 100.371(8).  Therefore, their prayer for injunctive relief should be denied.

**B.  Plaintiffs will not Suffer Irreparable Injury.**

Plaintiffs state that unless a preliminary injunction is granted, they will be "forever deprived of the opportunity to have their proposed constitutional amendment placed before the Florida electorate in November 2008," and will be forced to obtain additional signatures in order to obtain a ballot position on the 2010 General Election ballot. (Plaintiff's Memorandum pg. 19). By Plaintiffs' own admission, their alleged "injury" of not having their amendment on the ballot in 2008 can be remedied in 2010.  This is because § 100.371(3), Florida Statutes, provides that "each signature shall be dated when made and shall be valid for a period of 4 years following such date, provided all other requirements are met."  Thus, if injunctive relief is not provided in this action, a substantial number, if not all, of Plaintiffs' valid initiative signatures can be carried

over to Plaintiffs' campaign to obtain a ballot position on the 2010 General election ballot. Consequently, Plaintiffs will not suffer irreparable injury if injunctive relief is not granted in this case.

      **C.**    **The Threatened Injury to Plaintiffs Does Not Outweigh the Damage the Proposed Injunction May Cause the Defendant.**

In light of Plaintiffs' ability to use the current signatures to achieve ballot placement on the 2010 General election ballot, denying Plaintiffs injunctive relief will result in no severe damage to Plaintiffs. Conversely, granting the injunction would severely interfere with the State of Florida's "compelling interest in preserving the integrity of its election process." Purcell v. Gonzalez, 549 U.S. 1, 7 (2006) (citing Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 231 (1989)). "Confidence in the integrity of our electoral process is essential to the functioning of our participator democracy." Id. at 7.

The state's election process, as applied to initiatives, requires a constitutionally set number of verified signatures to be obtained for an initiative to receive a ballot placement. Plaintiffs failed to obtain the statutorily required number of verified signatures to have their initiative placed on the 2008 General election ballot. See Declaration of Sarah Jane Bradshaw. Copy attached as Attachment D. By moving this Court to force Defendant to assign a ballot position to Plaintiffs' initiative, Plaintiffs seek to circumvent the state's constitutional requirements for initiatives. Should this Court grant Plaintiffs their requested relief, the integrity of the electoral process Defendant is tasked to protect will be compromised. The resulting injury to the Defendant should the injunctive relief be granted outweighs the burden Plaintiffs may encounter in transferring the initiative's signatures to a 2010 campaign. Therefore, injunctive relief should be denied.

### D. **An Injunction Would Not Be in the Public Interest.**

Defendant denied Plaintiffs' a ballot position because Plaintiffs' initiative petition lacked the constitutionally required number of signatures. Plaintiffs now seek injunctive relief to require the inclusion of their ballot initiative on the 2008 General election ballot. In so doing, Plaintiffs ignore the public interest of having a ballot provision meet a "preliminary showing of a significant modicum of support" prior to being placed on the ballot. Jenness v. Fortson, 403 U.S. 431, 442 (1971). The United States Supreme Court has held that the interest in requiring the show of support is, "if no other, in avoiding confusion, deception, and even frustration of the democratic process." Id. at 442. Additionally, the Supreme Court has held that court orders affecting elections "can themselves result in voter confusion and consequent incentive to remain away from the polls." Purcell v. Gonzalez, 549 U.S. 1, 8 (2006). Thus, a court order granting injunctive relief to Plaintiffs, coupled with Plaintiffs' inability to exhibit the support necessary to obtain the statutorily required signatures for ballot placement, could confuse the public and frustrate the democratic process. Frustration of this kind is adverse to the public interest. Therefore, the request for injunctive relief should be denied.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Dated this 18th day of July, 2008.

/s Stephen C. Emmanuel
RICHARD E. DORAN
RDoran@Ausley.com
Florida Bar No. 0325104
STEPHEN C. EMMANUEL
SEmmanuel@Ausley.com
Florida Bar No: 0379646
Ausley & McMullen
227 South Calhoun Street
Tallahassee, Florida 32301

(850) 224-9115; Fax: (850) 222-7560

And

LYNN C. HEARN
General Counsel
Florida Department of State
Florida Bar No. 0123633
LCHearn@dos.state.fl.us
Office of the General Counsel
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399-0250
(850) 245-6536; Fax: (850) 245-6127

Attorneys for the Defendant, Kurt S. Browning, Florida Secretary of State.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of July, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Stephen C. Emmanuel
Attorney

**SERVICE LIST**

Gary Sinawski
GSinawski@aol.com
180 Montague Street 26th Floor
Brooklyn, NY 11201
Tele: (516) 971-7783
Fax: (212) 581-1352

Lesley Blackner
LBlackner@aol.com
Blackner, Stone & Associates
123 Australian Avenue
Palm Beach, FL 33480
Tele: (561) 659-5754
Fax: (561) 659-3184

Ross Stafford Burnaman
rossburnaman@earthlink.net
Florida Fish and Wildlife Conservation Commission
1018 Holland Drive
Tallahassee, FL 32301
Tele: (850) 942-1474

Attorneys for Plaintiffs
Florida Hometown Democracy, Inc.,
Pamela Winchester, Barbara Herrin,
Susan Dunn, John Dunn, Nancy Lee,
Joseph Florio, Janet Stanko and Joyce Tarnow

VIA CM/ECF

h:\rbh\sos\hometown democracy\memorandum in opposition prel. inj.5.doc