UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80636-Civ-Marra/Johnson

FLORIDA HOMETOWN DEMOCRACY, INC.,
PAMELA WINCHESTER, BARBARA HERRIN,
SUSAN DUNN, JOHN DUNN, NANCY LEE,
JOSEPH FLORIO, JANET STANKO and JOYCE
TARNOW,

     Plaintiffs,

 v.

KURT BROWNING, in his Official Capacity as
Florida Secretary of State,

     Defendant.

_____/

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

**I.  The Complaint States a Claim for Relief Against the Secretary of State.**

  The complaint states a claim for relief against defendant Secretary of State.  In light of the

Secretary's statutory responsibilities as Florida's chief election officer and his regular exercise of

supervision, direction and control over the Supervisors of Elections ("SOEs"), it is fitting that the

complaint do so.

  Fla. Stat. § 97.012 provides in relevant part:

**97.012 Secretary of State as chief election officer.**–The Secretary of State is the chief
election officer of the state, and it is his or her responsibility to:

1. (1) Obtain and maintain uniformity in the interpretation and implementation of the
election laws. In order to obtain and maintain uniformity in the interpretation and

1

implementation of the election laws, the Department of State may, pursuant to ss. 120.536(1) and 120.54, adopt by rule uniform standards for the proper and equitable interpretation and implementation of the requirements of chapters 97-102 and chapter 105 of the Election Code.

Fla. Stat. § 15.13 provides in relevant part that "[t]he Department of State shall have general supervision and administration of the election laws ... and such other laws as are placed under it by the Legislature ...."  As head of the Florida Department of State, the Secretary of State is required by law to "[p]lan, direct, coordinate, and execute the powers, duties, and functions vested in that department or vested in a division, bureau, or section of that department ...." Fla. Stat. §20.05(1)(a).  The same provision of Florida law provides that "powers and duties assigned or transferred to a division, bureau, or section of the department [of state] must not be construed to limit this authority and this responsibility."  Section 20.05 further provides that the head of a department such as the Secretary of State "[has] authority, without being relieved of responsibility, to execute any of the powers, duties, and functions vested in the department or in any administrative unit thereof through administrative units and through assistants and deputies designated by the head of the department from time to time ...."  Fla. Stat. § 20.05(1)(b).

In light of these statutory responsibilities, the Florida Secretary of State is clearly the appropriate defendant in ballot access litigation which challenges the validity, under the United States Constitution, of Florida laws and procedures regulating elections.  These include the provisions of Florida law which govern access to the ballot for proposed amendments to the Florida constitution motivated by citizens' initiatives.  One such provision of Florida law, challenged as unconstitutional by the plaintiffs, provides in relevant part that "[a] proposed amendment or revision of this constitution, or any part of it, by initiative shall be submitted to the

2

electors at the general election provided the initiative petition is filed with the custodian of state records[1] no later than February 1 of the year in which the general election is held." Fla. Const. Art. XI § 5(b).

Plaintiffs assert that the February 1 filing deadline for initiative petitions is unconstitutionally early under the ballot access jurisprudence developed by the United States courts. The Supreme Court has struck down, as unconstitutionally early, a February deadline for filing minor party qualifying petitions, Williams v. Rhodes, 393 U.S. 23 (1968), and a March deadline for filing independent candidate petitions, Anderson v. Celebrezze, 460 U.S. 780 (1983). It appears that the earliest mandatory petition-filing deadline ever upheld by a court is a North Dakota deadline set in mid-April of the election year. McLain v. Meier, 851 F.2d 1045 (8th Cir. 1988). It also appears that the only other cases in which courts have upheld petition-filing deadlines earlier than July of the election year are Rainbow Coalition of Oklahoma v. State Election Board, 844 F.2d 740 (10th Cir. 1988) (Oklahoma - May deadline), Fishbeck v. Hechler, 85 F.3d 162 (4th Cir. 1996) (West Virginia - May deadline) and Council of Alternative Political Parties v. Hooks, 179 F.3d 64 (3d Cir. 1999) (New Jersey - June deadline).

Suffice it to say that under these precedents Florida's February 1 filing deadline for citizens' initiative petition signatures is likely to be found unconstitutionally early.

**A.     The Complaint States a Claim Under 42 U.S.C. § 1983.**

42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

---

[1]Defendant Secretary of State serves as the custodian of state records. Fla. Stat. § 20.10(1).

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Plaintiffs point out that the Secretary has denied them access to the ballot by enforcing the February 1, filing deadline and the other restrictions about which plaintiffs complain. Defendant's actions, plaintiffs claim, violate Section 1983 in that they were taken under color of Florida law, unduly burden plaintiffs' First Amendment rights to cast their votes effectively and to associate for the advancement of political beliefs, and deprive plaintiffs of their rights to due process and equal protection of law secured by the Constitution of the United States. Complaint, ¶¶ 5, 35.

In short, plaintiffs have stated a claim against the Secretary of State under Section 1983. In violating plaintiffs' constitutional rights defendant acted "willfully," see Defendant's Memorandum at 5, albeit in compliance with Florida laws which he is duty-bound to uphold unless and until they are invalidated by legislative or judicial action. Defendant correctly points out that "Plaintiffs do not have a federal constitutional right to amend the Florida Constitution by initiative." Defendant's Memorandum at 7. The point, however, is that Florida's procedures for amending its constitution cannot exceed federal constitutional limitations. Plaintiffs urge that they do.

**B.      The Complaint States a Claim Against the Secretary for Improper Invalidation of Petition Signatures by Supervisors of Elections.**

The SOEs are charged with various ministerial and custodial duties regarding voter registration, election administration and verification of petition signatures. Fla. Stat. § 98.015 sets

4

out these duties as follows:

> (3) The supervisor shall update voter registration information, enter new voter registrations into the statewide voter registration system, and act as the official custodian of documents received by the supervisor related to the registration of electors and changes in voter registration status of electors of the supervisor's county.
>
> * * *
>
> (5) The supervisor shall preserve statements and other information required to be filed with the supervisor's office pursuant to chapter 106 for a period of 10 years from date of receipt.
>
> * * *
>
> (9) Each supervisor must make training in the proper implementation of voter registration procedures available to any individual, group, center for independent living, or public library in the supervisor's county.
>
> (10) Each supervisor shall ensure that all voter registration and list maintenance procedures conducted by such supervisor are in compliance with any applicable *requirements prescribed by rule of the department [of state]* through the statewide voter registration system or prescribed by the Voting Rights Act of 1965, the National Voter Registration Act of 1993, or the Help America Vote Act of 2002.
>
> (11) Each supervisor shall ensure that any voter registration system used by the supervisor for administering his or her duties as a voter registration official complies with the specifications and procedures *established by rule of the department [of state]* and the statewide voter registration system.
>
> (12) Each supervisor shall maintain a list of valid residential street addresses for purposes of verifying the legal addresses of voters residing in the supervisor's county. The supervisor shall make all reasonable efforts to coordinate with county 911 service providers, property appraisers, the United States Postal Service, or other agencies as necessary to ensure the continued accuracy of such list. The supervisor shall provide the list of valid residential addresses to the statewide voter registration system in the manner and frequency *specified by rule of the department [of state]*.

(Emphasis added.) The respective obligations of the SOEs and the Secretary of State with

respect to initiative petition signatures are set forth in Fla. Stat, § 100.371:

> (3) * * * The sponsor shall submit signed and dated forms to the appropriate supervisor of elections for verification as to the number of registered electors whose valid signatures appear thereon. The supervisor shall promptly verify the signatures within 30 days of receipt of the petition forms and payment of the fee required by s. 99.097. The supervisor shall promptly record, *in the manner prescribed by the Secretary of State*, the date each

form is received by the supervisor, and the date the signature on the form is verified as valid . * * *

(4) The Secretary of State shall determine from the signatures verified by the supervisors of elections the total number of verified valid signatures and the distribution of such signatures by congressional districts.  Upon a determination that the requisite number and distribution of valid signatures have been obtained, the secretary shall issue a certificate of ballot position for that proposed amendment and shall assign a designating number pursuant to s. 101.161.

(Emphasis added.)

The responsibilities of the SOEs with respect to initiative petitions are subject to the supervision and direction of the Secretary, who has regularly exercised his supervisory authority. The Secretary's Emergency Rule ISER08-01, a copy of which is appended to Defendant's Memorandum as Exhibit A, is but one example.  Others are attached to the Complaint as Exhibits B, C and E and to the June 26, 2008 Affidavit of Barbara Herrin in support of plaintiffs' motion for a preliminary injunction as Exhibits F, M and O.

In light of the authority regularly exercised by the Secretary over the SOEs' signature-verification processes, the Secretary is the appropriate defendant as to plaintiffs' claims that the various SOEs used disparate, and therefore unconstitutional, signature-verification criteria. Complaint, ¶¶ 5, 27-30, 34.

## II.    Venue is Proper in the Southern District of Florida

Venue in this case is governed principally by 28 U.S.C. § 1391(b), which provides:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

6

Venue is also governed by this Court's "General Civil Case Filing Requirements," which provide in § IV.C as follows:

> C) Complaint Against the Secretary of the State of Florida
> Any such suit or action should be brought in the district where the action arose or where the *defendant* is located. If the *defendant* is not within this District, the venue is the location where the *plaintiff* is located.

(Emphasis in original.)

Venue is proper in the Southern District of Florida under 28 U.S.C.. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District. The District includes nine of Florida's most populous counties (Broward, Dade, Highlands, Indian River, Martin, Monroe, Okeechobee, Palm Beach and St. Lucie), in which the plaintiffs obtained or caused to be obtained many of the 820,034 petition signatures which were filed with the SOEs before the February 1, 2008 statutory deadline.[2] Complaint, ¶ 25; Exhibit J to Affidavit of Barbara Herrin dated June 26, 2008 ("Herrin Aff."), submitted as Exhibit 2 to Plaintiffs' Motion for a Preliminary Injunction and incorporated herein by reference. In fact, the Division of Elections website credits Florida Hometown Democracy with approximately 183,000 valid petition signatures in these nine counties. http://election.dos.state.fl.us/initiatives/initdetail. asp?account=37681&seqnum=2. The petition signatures obtained and filed with the SOEs in these counties and throughout the State of Florida were subjected to a myriad of vagueries and

---

[2] 611,009 valid signatures are necessary to qualify the Hometown Democracy amendment for the November 2008 ballot. Complaint, ¶ 26. As of July 21, 2008 the Division of Elections website credited Hometown Democracy with 607,951 valid signatures, from which were subtracted 13,247 revocations. Fla. Stat. § 100.371(6), which purports to allow such revocations, was recently invalidated by Florida's First District Court of Appeals. Florida Hometown Democracy v. Browning, 980 So.2d 547 (Fla. 1 Dist. Ct. App. April 23, 2008). Defendant has appealed to the Florida Supreme Court, and the ruling is stayed pending the appeal.

inconsistencies in the SOEs' signature-verification standards and processes.  Id.; Complaint, ¶¶ 27-30.

The "events or omissions giving rise to" plaintiffs' other claims, within the meaning of 28 U.S.C. § 1391(b)(2), have occurred uniformly throughout the State of Florida and are as appropriately asserted in this District as in any other.  These claims concern the constitutionality of the February 1 petition-filing deadline and the constitutionality of Fla. Stat. § 100.371(8), which empowers private owners of commercial property to permit or prohibit petitioning on their premises as they see fit.

Venue is also proper in this District under § IV.C of the Court's "General Civil Case Filing Requirements," quoted above.  Section IV.C provides that this action "is to be brought in the district where the action arose" (this District, as much as any other) and that "if the *defendant* is not within this District, the venue is the location where the *plaintiff* is located."  Two of the individual plaintiffs (Florio and Lee) are located in (i.e., reside in) this District, five (Winchester, Herrin, Stanko and Susan and John Dunn) are located in the Middle District of Florida; and one (Tarnow) is located in the Northern District.  Plaintiff Florida Hometown Democracy, Inc. is "located" in all three Florida federal court districts.

In the unlikely event the Court determines that venue more appropriately lies in the Northern District, plaintiffs ask that the Court exercise its discretion by transferring the case pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Transfer would better serve the interests of justice than dismissal followed by *de novo*

recommencement, as this controversy must be expeditiously resolved. Upon information and belief, the contents of the ballots for the November 4, 2008 general election must be finalized by August 22, 2008 in order for proponents of citizens' initiatives such as the Hometown Democracy initiative to comply with the publication requirements set forth in Fla. Const. Art. XI § 5.

### III.    A More Definite Statement of Plaintiffs' Claims Should not be Necessary

The complaint unambiguously states plaintiffs' claims against defendant. It clearly alleges that he has violated plaintiffs' rights under the First Amendment and under the Due Process and Equal Protection Clauses, without a sufficient state interest to justify those violations, by enforcing the February 1 filing deadline for citizens' initiative petition signatures; by suffering the use of disparate and inconsistent signature-verification standards by the SOEs; by permitting commercial property owners to invoke the power of the state to prohibit Hometown Democracy petitioning on their premises; and by denying the Hometown Democracy amendment access to the November ballot. The complaint recites that these actions were taken and these omissions were made under color of state law and that defendant is therefore liable to plaintiffs under 42 U.S.C. § 1983. There should be no confusion as to which allegations support which claims. The complaint is hardly the sort of "shotgun" pleading that defendant denounces in his Memorandum at 15-16.

### IV.    The Supervisors of Elections are not Necessary Parties

As previously noted, the Secretary of State (not the SOEs) is responsible for "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws." Fla. Stat. § 97.012.1.(1). As previously noted, the SOEs perform various administrative and ministerial tasks in connection with Florida's electoral system. These tasks include the verification of petition signatures filed in support of citizens' initiatives. In light of the

Secretary of State's responsibilities, the signature-verification process is regulated by rules,

directives and memoranda issued by the Department of State, examples of which are attached as

exhibits to the complaint.  Plaintiffs' quarrel is not with the SOEs' actions or omissions but with

the Secretary's failure adequately to regulate the SOEs.  Unlike the Secretary, the SOEs play no

role as custodians or enforcers of Florida laws such as those which set the February 1 filing

deadline and empower commercial property owners to prohibit the collection of petition

signatures.  Unlike the Secretary, the SOEs would therefore be superfluous defendants.

For these reasons, the Secretary is a necessary party defendant and the SOEs are not.

Joining the SOEs would only encumber this litigation with 67 wholly unnecessary defendants.  In

the parlance of Fed. R. Civ. P. 19, the Court *can* accord complete relief among the existing

parties in the SOEs' absence, and the SOEs have claimed no interest relating to the subject of the

action and are not so situated that disposing of the action in their absence may impair their ability

to protect their (nonexistent) interests or subject the Secretary to any risk of incurring multiple or

inconsistent obligations.

### Conclusion

For the foregoing reasons, defendant's motion should be expeditiously denied in its

entirety.

Dated: July 21, 2008

Respectfully submitted,

Gary Sinawski
GSinawski@aol.com
180 Montague Street 26th Floor
Brooklyn, NY 11201
Tel: (516) 971-7783

Fax: (212) 581-1352

s/*Lesley Blackner*

Lesley Blackner
LBlackner@aol.com
Florida Bar No. 654403
123 Australian Avenue
Palm Beach, FL 33480
Tel: (561) 659-5754
Fax: (561) 659-3184

Ross Stafford Burnaman
rossburnaman@earthlink.net
Florida Bar No. 397784
1018 Holland Drive
Tallahassee, FL 32301
Tel: (850) 942-1474

Attorneys for Plaintiffs