UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80636-Civ-Marra/Johnson

FLORIDA HOMETOWN DEMOCRACY, INC.,
PAMELA WINCHESTER, BARBARA HERRIN,
SUSAN DUNN, JOHN DUNN, NANCY LEE,
JOSEPH FLORIO, JANET STANKO and JOYCE
TARNOW,

                    **Plaintiffs,**

   v.

KURT BROWNING, in his Official Capacity as
Florida Secretary of State,

                    **Defendant.**

_____/

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

**I.      Venue is Proper in the Southern District of Florida**

For the reasons stated in Plaintiffs' Memorandum in Opposition to Defendant's Motion to

Dismiss, venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that "a substantial part of

the events or omissions giving rise to the claim occurred" either in the Southern District or

uniformly throughout Florida, making venue as appropriate in the Southern District as in any

other district.  The authorities cited in Defendant's Memorandum in Opposition to Plaintiffs'

Motion for Preliminary Injunction ("Defendant's Memorandum") are for the most part inapposite

because they principally concern venue in diversity cases under 28 U.S.C. § 1391(a).

Venue is similarly proper in this District under § IV.C of the Court's "General Civil Case

Filing Requirements," in that the action arose in this District as much as in any other; the

defendant is arguably "not within this District;" and the plaintiffs are as much "located" in this

District as in any other.

## II.    Plaintiffs Have Met the Requirements for a Preliminary Injunction

### A.    Plaintiffs Have a Substantial Likelihood of Success on the Merits

Plaintiffs certainly do not, as defendant would have it, proceed from the assumption that laws imposing any burden on the right to vote are invariably subject to strict scrutiny. Defendant's Memorandum at 4.  Plaintiffs have pointed out that the test for determining the constitutionality of ballot access restrictions, as developed by the Supreme Court in Anderson v Celebrezze, 460 U.S. 780 (1983) and Burdick v. Takushi, 504 U.S. 428 (1992) is "a balancing test that ranges from strict scrutiny to a rational-basis analysis, depending upon the factual circumstances in each case." Duke v. Cleland, 5 F.3d 1399, 1405 (11th Cir. 1993) (citing Fulani v. Krivanek, 973 F.2d 1539, 1543 (11th Cir. 1992)).  Based on the application of the Anderson/Burdick test in the present case, plaintiffs are entirely likely to succeed on the merits.

Florida's new February 1 deadline for filing citizens' initiative petitions is likely to be found per se unconstitutional under the line of cases cited in plaintiffs' principal Memorandum at 12-13, which employed the Anderson/Burdick form of analysis or an earlier form of equal protection analysis validated by the Anderson court.  Id. at 786 n. 7.  Plaintiffs pointed out that there appear to be only four cases in which courts have upheld petition filing deadlines earlier than July of the election year, with the earliest such deadline set in mid-April.

In an attempt to justify the February 1 deadline, the defendant erroneously suggests that the Florida Supreme Court must render its opinion on the validity of a citizens' initiative petition within the two-month period immediately following the February 1 filing deadline, i.e., between February 1 and April 1 of the election year.  Defendant's Memorandum at 5-6.  To the contrary, an initiative petition is eligible for review by the Florida Supreme Court once its proponents have

obtained ten percent of the required number of signatures in the requisite number of congressional districts. Fla. Const. Art XI § 3. On June 22, 2006, the Supreme Court unanimously approved the measure for placement on the ballot once the constitutionally required number and distribution of signatures are obtained. <u>Advisory Opinion to the Attorney General Re: Referenda Required for Adoption and Amendment of Local Government Land Use Comprehensive Plans</u>, 938 So.2d 501 (Fla S.Ct. 2006). Complaint, ¶ 19.

Thus, defendant's professed concern over "how the Florida Supreme Court will be able to timely comply with the April 1 deadline if the February 1 deadline is ruled unconstitutional" is wholly unfounded. Defendant's Memorandum at 6. The new April 1 deadline for Supreme Court review merely establishes a date (April 1 of the year in which the measure will be submitted to the electorate) beyond which Supreme Court review is untimely; it does *not* establish a time by which, or within which, review must be sought.

### 1.    The February 1 Deadline Violates the First Amendment

Requiring citizens' initiative petitions to be filed on February 1 has negative consequences for plaintiffs' First Amendment speech and associational rights identical to the negative consequences of deadlines for filing petitions to qualify candidates and parties for the ballot that have been held unconstitutionally early. As the Supreme Court noted in <u>Anderson</u>, "[w]hen ... the election itself is ... remote... [v]olunteers are more difficult to recruit and retain, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign." 460 U.S. at 792. Further, "it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." [Footnote omitted.] <u>Id.</u> The Court went on to note that "[o]ur ballot access cases ... focus on the degree to which the

challenged restrictions operate as a mechanism to exclude certain classes of candidates form the electoral process.  The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.'"  [Citations omitted.]

Defendant additionally attempts to justify the February 1 deadline by asserting that a later deadline would "reduce the amount of time for public debate on a proposed initiative and deprive the Legislature of the opportunity to propose alternatives."  Defendant's Memorandum at 6.  Neither of these dubious state interests falls within the proper ambit of a state's mission to safeguard the fairness and integrity of elections, and neither of them can justify a filing deadline set more than nine months before the election.  Nor does defendant mention that these questionable state interests were ignored by the legislature when it left intact the 90-day pre-election deadline for proposed constitutional amendments motivated by any of the other four methods permitted by Fla. Const. Art. XI.

It is certainly true, as defendant asserts, that "there is no [federal] constitutionally protected right to place an initiative on the ballot."  Defendant's Memorandum at 8.  It is also true that there *are* "[federal] constitutional limitations on the generally broad power of states to institute procedures governing their own initiative processes – should they choose to create such processes in the first place."  Biddulph v. Mortham, 89 F.3d 1491, 1500 (citing to Meyer v. Grant, 486 U.S. 414 (1988) and Delgado v. Smith, 861 F.2d 1489 (11th Cir. 1988), cert. denied, 492 U.S. 918 (1989)).  As the Sixth Circuit stated in Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 295, "[i]n Meyer v. Grant, [supra] ... [a] unanimous Court concluded that although the right to an initiative is not guaranteed by the federal Constitution, once an initiative procedure is created, the state may not place restrictions on the exercise of the initiative that unduly burden First Amendment rights."

As previously noted, the February 1 deadline oversteps these constitutional limitations. So does the application of disparate signature-verification criteria by the various supervisors of elections, as a result of which signatures invalidated in some counties would be deemed valid in others. These inconsistent verification criteria eviscerate the "core political speech" involved in circulating and signing initiative petitions. Cf. Meyer v. Grant, supra at 421-22 (holding, inter alia, that state's prohibition against paying initiative petition circulators restricted political expression by reducing the likelihood that the petitioners would obtain the number of signatures necessary for ballot access, thereby limiting their ability to promote statewide discussion of the issues raised by the initiative).

The decimation of plaintiffs' right to engage in core political speech is not confined to the early filing deadline and the application of disparate signature-verification standards. It extends to the newly-enacted right of petition signers to revoke their signatures;[1] the "double-counting" of an unknown number of revoked signatures; the newly-enacted statutory right of private property owners to selectively restrict initiative petitioning; the malfunctioning of the state's signature-verification software; the dearth of time and resources available to SOEs to review petition signatures; the refusal of some SOEs to review petitions filed in January; the misplacing of petitions filed with some SOEs; and the invalidation of thousands of petitions inadvertently sent to the wrong counties. Complaint, ¶¶ 27-30. In combination, these and other errors and omissions are not mere "garden variety election irregularities." Defendant's Memorandum at 11. They strike at the heart of plaintiffs' rights to engage in core political speech and association. Even

---

[1]The right of revocation was invalidated by Florida's First District Court of Appeals in Florida Hometown Democracy v. Browning, 980 So.2d 547 (Fla. 1 Dist. Ct. App. April 23, 2008), but the District Court of Appeals' ruling is stayed pending an appeal by defendant to the Florida Supreme Court.

"under the rational relationship analysis, a state is not required to use the best method for examining its petitions.  A state is only constitutionally required to use a method that is rationally related to the legitimate interest of ensuring that an election is fair and honest." Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 299 (6th Cir. 1993).  Here, no credible claim can be made that Florida's incorrigibly flawed method for examining its initiative petitions is rationally related to its legitimate interest of ensuring fair and honest elections.  The emergency rules recently promulgated by defendant are tantamount to an admission that the state's system for reviewing initiative petition signatures simply does not work.  Herrin Affidavit in support of Plaintiffs' Motion for Preliminary Injunction, Ex. O.

### 2. Defendant has Violated Plaintiffs' Constitutional Rights

As explained more fully in Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, as chief election officer of Florida the defendant in responsible for enforcing the February 1 filing deadline and ensuring uniformity in the interpretation and implementation of Florida's election laws.  Fla. Stat. §97.012.  The Department of State has "general supervision and administration of the election laws."  Defendant regularly exercises supervision, direction and control of the supervisors of election in connection with their processing of initiative petitions.  They function as his agents in this realm, and their actions and omissions are attributable to him.

The Eleventh Circuit stated in Burton v. State of Georgia, 953 F.2d 1266, 1271 (11th Cir. 1992) that "[s]o long as the election process is not so impaired that it is 'patently and fundamentally unfair,' substantive due process is satisfied."  Defendant's Memorandum at 11.  However, plaintiffs have alleged that Florida's system for processing initiative petitions, at least as applied to them, *is* so demonstrably and fundamentally corrupted as to sabotage their due process rights.

The defendant and his agents have also violated plaintiffs' equal protection rights. The Ninth Circuit has explained that "[t]he ballot initiative, like the election of public officials, is a "'basic instrument of democratic government,'" [citations omitted] and is therefore subject to equal protection guarantees. Those guarantees furthermore apply to ballot access restrictions just as they do to elections themselves [citation omitted]." Idaho Coalition United for Bears v. Cenarrussa, 342 F.3d 1073, 1076 (9th Cir. 2003). The court noted "that state requirements for certifying ballot initiatives also implicate the free speech right and are subject to equal protection guarantees for that reason as well." Id. n. 6 (citing Meyer v. Grant, supra, at 421-22).

Defendant's reliance on Gold v. Feinberg, 101 F.3d 796, 800 (2d Cir. 1996) is misplaced, as that controversy centered on a voting machine malfunction on election day. Defendant's Memorandum at 12. Here, the requisite "intentional and purposeful discrimination" against the plaintiffs and perhaps other proponents of initiative petitions is found in the new law advancing the filing deadline from 90 days to nine months before the election; the new law restricting the supervisors of election to a period of 30 days for reviewing petition signatures; the new law permitting revocation of petition signatures; the promulgation by the Division of Elections of a December 31 filing deadline notwithstanding the February 1 statutory deadline; the tardy steps taken by defendant to compensate for the failure of the Florida Voter Registration System (FVRS) to account for processed signatures; and the statutory empowerment of commercial property owners to restrict petitioning.

The suspect classification on which the discrimination asserted by plaintiffs is based is the proponents of amendments to the Florida constitution proposed by citizens' initiatives, as distinguished from the proponents of amendments proposed by the other four methods enumerated in Fla. Const. Art. XI. Plaintiffs submit that the classification, as implemented by the

defendant and his agents, cannot survive any level of constitutional scrutiny.

### 3.    The Supervisors of Election are not Necessary Parties

To state the obvious, as plaintiffs are not seeking any relief from the supervisors of election, they are not necessary parties.  Complete relief can be accorded among the existing parties in the supervisors' absence, as they have claimed no interest relating to the subject of the action and are not so situated that disposing of the action in their absence may impair their ability to protect their (nonexistent) interests or subject the Secretary of State to any risk of incurring multiple or inconsistent obligations.  See Fed. R. Civ. P. 19.

### 4.    Fla. Stat. 100.371(8) is Unconstitutional

Simultaneously herewith, a copy of Plaintiffs' Motion for Preliminary Injunction and supporting papers are being served on Florida's Attorney General.

The complaint makes it clear that the enactment of Section 100.372(8) has impaired plaintiffs' ability to collect petition signatures.  Complaint, ¶ 22 ("The enactment of this amendment enabled many commercial establishments to prohibit the circulation of Hometown Democracy petitions.")  The constitutionality of this statute is thus intimately related to plaintiffs' ballot access claims.

The right of commercial property owners to place reasonable time-place-manner restrictions on initiative petitioning and other First Amendment activity, both before and after the enactment of this statute, is not being questioned.  By enacting the statute, however, the state has lent its imprimatur to the restriction, and even to the prohibition, of such First Amendment activity.  This is unvarnished state action within the meaning of 42 U.S.C. § 1983.  Plaintiffs assert that the statute, like the other restrictions on citizens' initiatives about which they complain, oversteps federal constitutional boundaries.  In its application to the collection of petition

signatures, the statute is unquestionably one of Florida's "election laws." As the chief election officer of the state, charged with responsibility for the supervision and administration of its election laws, the Secretary of State is the appropriate defendant on this claim. Plaintiffs have met the Article III requirements of causation and redressability in that defendant has permitted the statute to stand unchallenged, and a declaration that it is unconstitutional would remove it as an impediment to plaintiffs' efforts to gain access to the ballot.

**B.    Plaintiffs will Suffer Irreparable Injury Unless an Injunction is Issued**

Plaintiffs commenced their efforts to gain ballot access for the Hometown Democracy amendment in 2003. Complaint, ¶¶ 17, 18. A very substantial number of the petition signatures they have obtained to date will no longer be valid in 2010. This number is unknown to plaintiffs but should be known to (or at least knowable by) the defendant and his agents. Suffice to say that plaintiffs would be required to expend the time, energy and resources necessary to obtain at least this number of additional signatures if they are not granted access to the 2008 ballot. In light of their experience to date, they also anticipate that in the absence of the judicial relief they seek they wouldl have to contend with additional ballot access impediments.

Under the circumstances presented, plaintiffs should not be required to wait until 2010 to access the ballot. The prospect of failing to qualify for the ballot is itself "a real or immediate threat of an irreparable injury." <u>ACLU of Nevada v. Lomax</u>, 471 F.3d 1010, 1015 (9th Cir. 2006)("It is clear that the Committee suffered a real or immediate threat of an irreparable injury, namely the failure of its initiative to qualify for the ballot. It is also clear that the enforcement of the challenged rule caused this injury. The injury was also redressable when the Committee filed suit. Had the Committee succeeded on all three of its claims, the initiative would have qualified for the ballot.")

**C.    The Threatened Injury to Plaintiffs Outweighs any Damage an Injunction May Cause Defendant**

As plaintiffs point out in their principal Memorandum, no cognizable harm could be suffered by the defendant from an injunction prohibiting him from enforcing the demonstrably unconstitutional restrictions on access to the ballot to which plaintiffs object and directing him to grant plaintiffs access to the November 2008 general election ballot.  Defendant's assertion that "granting the injunction would severely interfere with the state of Florida's 'compelling interest in preserving the integrity of its election process'" only begs the question of whether denying plaintiffs access to the ballot violates their constitutional rights.

**D.    An Injunction Would Advance the Public Interest**

The public interest calls for the vindication of plaintiffs' and the Florida electorate's rights to political speech and association and to due process and equal protection of law.  Barring plaintiffs from the ballot on account of the new February 1 filing deadline and the other impediments to ballot access about which plaintiffs complain operates to thwart these rights.

As of the date hereof, the Division of Elections' website reflects 609,068 valid Hometown Democracy petitions.  Plaintiffs have established that there is indeed a "modicum of support" for the measure, particularly in light of the myriad obstacles they have encountered in their efforts to place it on the ballot.

**Conclusion**

For the foregoing reasons and those stated in its principal Memorandum, plaintiffs' Motion for Preliminary Injunction should be granted.

Dated: July 28, 2008

Respectfully submitted,

Gary Sinawski

10

GSinawski@aol.com
180 Montague Street 26th Floor
Brooklyn, NY 11201
Tel: (516) 971-7783
Fax: (212) 581-1352

s/*Lesley Blackner*
Lesley Blackner
LBlackner@aol.com
Florida Bar No. 654403
123 Australian Avenue
Palm Beach, FL 33480
Tel: (561) 659-5754
Fax: (561) 659-3184

Ross Stafford Burnaman
rossburnaman@earthlink.net
Florida Bar No. 397784
1018 Holland Drive
Tallahassee, FL 32301
Tel: (850) 942-1474

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2008, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on the following counsel of record by Notice of Electronic Filing

generated by CM/ECF :

RICHARD E. DORAN
RDoran@Ausley.com
STEPHEN C. EMMANUEL
SEmmanuel@Ausley.com
Ausley & McMullen
227 South Calhoun Street (32301)
Post Office Box 391
Tallahassee, Florida 32302
(850) 224-9115; Fax: (850) 222-7560

LYNN C. HEARN
General Counsel
Florida Department of State
LCHearn@dos.state.fl.us
Office of the General Counsel
R.A. Gray Building
500 South Bronough Street
Tallahassee, FL 32399-0250
(850) 245-6536; Fax: (850) 245-6127

                                        s/ *Lesley Blackner*
                                        _____
                                        Lesley Blackner